UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, AND APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND; TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND; and CARPENTER CONTRACT ALLIANCE OF METROPOLITAN NEW YORK,<br><br>                             Petitioners,<br><br>                                -v.-<br><br>RASHEL CONSTRUCTION CORP.,<br><br>                             Respondent. | 22 Civ. 9854 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

      Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund (the "ERISA Funds"); Trustees of the New York City Carpenters Relief and Charity Fund (the "Charity Fund"); and Carpenter Contractor Alliance of Metropolitan New York ("CCA Metro," and together with the ERISA Funds and the Charity Fund, "Petitioners"), filed this motion for summary judgment in support of their petition to confirm an arbitral award (the "Award"). The Court has jurisdiction to confirm the Award pursuant to Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), *as amended*, 29 U.S.C. § 185. The motion is unopposed, inasmuch as Rashel Construction Corp. ("Respondent") has neither acknowledged the petition nor made any effort to contest confirmation of the Award. For the

reasons set forth in the remainder of this Opinion, the Court grants Petitioners' motion.

## BACKGROUND[1]

### A. Factual Background

Respondent became bound to the 2015-2018 New York City Agency Renovation & Rehabilitation of City Owned Buildings/Structures Project Labor Agreement (the "PLA") following its execution of several letters of assent between June 26, 2017, and February 16, 2018. (Pet. 56.1 ¶¶ 5-6; Davidian Decl. ¶ 8). In turn, the PLA bound Respondent to the New York City District Council of Carpenters' (the "Union") Independent Building Construction Agreement (the "CBA") covering the period between July 1, 2017, and June 30, 2024. (Pet. 56.1 ¶ 7; Davidian Decl. ¶ 9). Under both the CBA and the PLA, Respondent is required to remit contributions to Petitioners for every hour worked by Respondent's employees within the trade and geographical

---

[1] The facts set forth in this Opinion are taken from Petitioners' Local Civil Rule 56.1 Statement of Material Facts (Dkt. #18 ("Pet. 56.1")), and from various exhibits to the Declaration of William Davidian (Dkt. #15 ("Davidian Decl., Ex. [ ]")), including the September 1, 2022 arbitral award (Davidian Decl., Ex. J (the "Award")), the Project Labor Agreement Covering Specified Renovation and Rehabilitation of New York City Housing Authority Buildings and Structures (*id.*, Ex. B (the "Project Labor Agreement" or "PLA")), the Independent Building Construction Agreement covering the period July 1, 2017, through June 30, 2024 (*id.*, Ex. C (the "Collective Bargaining Agreement" or "CBA")), the Revised Statement of Policy for Collection of Employer Contributions (*id.*, Ex. H (the "Collection Policy")), and the Notice of Arbitration Hearing (*id.*, Ex. I (the "Notice")); and the Declaration of Adrianna Grancio (Dkt. #16 ("Grancio Decl., Ex. [ ]")), including the Final History Bill for the Court (Grancio Decl., Ex. L (the "Virginia Bill")). Citations to Petitioners' Rule 56.1 Statement incorporate by reference the documents cited therein. Where facts stated in the Rule 56.1 Statement are supported by admissible evidence and are not contested by Respondent, the Court accepts such facts as true. *See* Local Civil Rule 56.1(c)-(d).

For ease of reference, the Court refers to Petitioners' memorandum of law in support of their motion for summary judgment as "Pet. Br." (Dkt. #17).

jurisdiction of the Union. (Pet. 56.1 ¶ 9; Davidian Decl. ¶ 11). Additionally, the CBA requires Respondent to furnish its books and payroll records when requested by Petitioners for the purpose of conducting an audit to ensure compliance with benefit fund contribution requirements. (Pet. 56.1 ¶ 16; CBA Art. XV § 1).

Pursuant to the terms of the CBA and the PLA, Respondent is also bound to the Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). (Pet. 56.1 ¶¶ 11-12). Among the terms of the Collection Policy is an arbitration clause and a provision stating that, should Petitioners be required to arbitrate a dispute or file a lawsuit over non-remittance of funds, Petitioners are entitled to collect: (i) interest on the unpaid contributions at the rate of the Citibank prime rate plus two percent; (ii) liquidated damages in the amount of twenty percent of the unpaid contributions; and (iii) reasonable attorneys' fees and costs incurred in collecting unpaid contributions from an employer. (*Id.* ¶¶ 13, 18; CBA Art. XV § 6; Collection Policy § V). In addition to the requirements for remittance of payment by the employer, the Collection Policy details the process through which Petitioners are to determine the estimated amount of an employer's delinquent contributions should the employer fail to remit payments or provide access to its books and records. (Pet. 56.1 ¶ 17; Davidian Decl. ¶ 19; Collection Policy § IV).

Following Respondent's refusal to comply with an audit, Petitioners conducted an estimated audit for the period covering April 1, 2018, through December 26, 2020, pursuant to the terms of the Collection Policy, and found

that Respondent had failed to remit contributions in the principal amount of $15,169.92. (Pet. 56.1 ¶ 24; Award 4, 5; Davidian Decl. ¶ 23). Petitioners initiated the underlying arbitration proceedings on July 11, 2022, after Respondent refused to pay the audit findings. (Pet. 56.1 ¶ 21; Davidian Decl. ¶ 24; Award 2). On July 14, 2022, arbitrator Jeffrey G. Stein (the "Arbitrator") issued a Notice of Arbitration Hearing (the "Notice") to the parties setting forth a hearing date of August 18, 2022. (Davidian Decl., Ex. I).

The Arbitrator convened the hearing on August 18, 2022, with both parties in attendance. (*See generally* Award). The Arbitrator found that Respondent was fully bound to the terms of the Collection Policy. (*Id.* at 2). Respondent did not dispute the principal amount owed, but argued only that it should not have to pay the additional audit costs of $16,672.50. (*Id.* at 3). Respondent made three arguments: (i) it claimed the audit costs exceeded the principal amount and were therefore excessive; (ii) it questioned why the costs were so high; and (iii) it contended that Petitioners had offered to waive the audit costs and Respondent accepted that offer, thereby resolving the matter. (*Id.*).

On September 1, 2022, the Arbitrator rendered an award in favor of Petitioners. (Pet. 56.1 ¶¶ 23-24; Award 7). The Arbitrator found that Respondent violated the CBA when it failed to remit accurate and timely contributions to the Funds. (Pet. 56.1 ¶ 24). Further, regarding the audit dispute, the Arbitrator found that (i) neither of the Collection Policy's tests for a cost waiver was met, and thus the mere fact that the audit costs exceeded the

4

principal amount was irrelevant; (ii) the auditor's process was sound; and (iii) there was no legally enforceable offer and acceptance of an audit cost waiver. (Award 5-6).

The Arbitrator ordered Respondent to pay Petitioners a sum of $40,763.17, consisting of the principal amount of $15,169.92, interest thereon of $2,712.75, liquidated damages of $3,282.04, audit costs of $16,672.50, promotional fund contributions of $25.96, court costs of $400, attorneys' fees of $1,500, and the arbitrator's fee of $1,000 in accordance with the CBA and the Collection Policy, with interest to accrue at an annual rate of 6.75% from the date of the Award's issuance. (Award 7-8; Pet. 56.1 ¶¶ 24-25). Petitioners served Respondent with a letter demanding compliance with the Award on September 12, 2022, but, to date, Respondent has failed to comply. (Pet. 56.1 ¶¶ 26-27; Davidian Decl. ¶ 29).

**B.   Procedural Background**

Petitioners initiated this case by filing a petition to confirm an arbitral award on November 18, 2022. (Dkt. #1). On November 21, 2022, the Court ordered Petitioners to move for confirmation of the Award in the form of a motion for summary judgment. (Dkt. #8). That same Order established briefing deadlines for the parties. (*Id.*). On November 22, 2022, Petitioners served the petition on Respondent. (Dkt. #9). After granting, at Petitioners' request, the parties an extension of time to submit their briefing, Petitioners submitted their motion for summary judgment and supporting papers on

December 21, 2022.  (Dkt. #14-18).  Petitioners served Respondent with these papers that same day.  (Dkt. #19).

## DISCUSSION

### A. The Court Confirms the Arbitration Award

#### 1. Confirmation of Arbitration Awards

"Section 301 of the [LMRA] …provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards."  *Local 802, Assoc. Musicians of Greater N.Y.* v. *Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998).  Federal court review of arbitral awards is "severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  *United Bhd. of Carpenters & Joiners of Am.* v. *Tappan Zee Constructors, LLC*, 804 F.3d 270, 274-75 (2d Cir. 2015) (internal quotation marks and citation omitted).  "The federal policy in favor of enforcing arbitration awards is particularly strong with respect to arbitration of labor disputes."  *N.Y. Hotel & Motel Trades Council* v. *Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997).  Because the LMRA "embodies a 'clear preference for the private resolution of labor disputes,'" *Nat'l Football League Mgmt. Council* v. *Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Int'l Bhd. of Elec. Workers* v. *Niagara Mohawk Power Corp.,* 143 F.3d 704, 714 (2d Cir. 1998)), judicial review of arbitral awards in this context is "among the most deferential in the law," *id.* at 532.

Confirmation of an arbitration award is thus generally "a summary proceeding that merely makes what is already a final arbitration award a

6

judgment of the court[.]" *D.H. Blair & Co., Inc.* v. *Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks and citations omitted). The Court's task is not to reconsider the merits of the dispute; after all, the parties bargained for the arbitrator's view of the facts and the law. *Nat'l Football League Mgmt. Council*, 820 F.3d at 536. Instead, the Court's role is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* at 537 (quoting *United Paperworkers Int'l Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also Major League Baseball Players Ass'n* v. *Garvey*, 532 U.S. 504, 509 (2001) ("It is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." (quoting *United Steelworkers of Am.* v. *Enter. Wheel & Car Corp.,* 363 U.S. 593, 597 (1960))). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case. Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks and citations omitted). Given this deference and limited review, an arbitral award will normally be vacated "only upon finding a violation of one of the four statutory bases [enumerated in the FAA], or, more rarely, if [the court]

find[s] a panel has acted in manifest disregard of the law." *Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).[2]

### 2. Summary Judgment Under Federal Rule of Civil Procedure 56

When a petition to confirm an arbitration award is unopposed, courts treat "the petition and accompanying record ... as akin to a motion for summary judgment." *D.H. Blair & Co.*, 462 F.3d at 109. Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[3] A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely disputed "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[2] By statute, an award may be vacated:

> [i] where the award was procured by corruption, fraud, or undue means; [ii] where there was evident partiality or corruption in the arbitrators, ... ; [iii] where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or [iv] where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

[3] The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact. *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination."). This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

The moving party bears the burden of demonstrating the absence of a disputed material fact, and in making this determination the Court must view all facts in the light most favorable to the non-moving party.  *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met its initial burden, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial."  *Parks Real Est. Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).  When a summary judgment motion is unopposed, "the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law."  *Vt. Teddy Bear Co., Inc.* v. *1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (internal quotation marks omitted).

    **3.    The Grounds for the Award Are Clear and No Grounds Exist to Vacate the Award**

Petitioners' evidence demonstrates the absence of a triable dispute regarding the Award's validity.  Petitioners presented evidence demonstrating that Respondent was required to make certain payments to Petitioners, and that such payments were not made pursuant to the terms of the CBA and Collection Policy.  (Award 3).  Respondent did not dispute the obligation to pay the principal amount owed as determined by the audit and instead only argued an obligation to pay the additional audit costs.  (*Id*. at 4).  In rejecting this argument, the Arbitrator considered evidence including email records, auditor testimony, and the audit cost provisions contained within the agreed-upon Collection Policy.  (*Id*. at 3-6).  The Arbitrator used that evidence to reject all three of Respondent's arguments pertaining to audit costs and to justify the

Award.  (*Id.* at 6-7).  Given the evidence presented and its application to the disputed audit costs, there clearly exists a "colorable justification" for the Award.  *See D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted).

Additionally, there are no grounds for setting aside the Award.  None of the statutory grounds for vacatur applies to this case: the record does not indicate that (i) Petitioners acquired the Award via corruption, fraud, or undue means; (ii) the Arbitrator was unfairly biased; (iii) the Arbitrator engaged in misconduct or prejudicial behavior; or (iv) the Arbitrator acted beyond the explicit scope of his powers.  *See* 9 U.S.C. § 10(a) (providing the four statutory grounds for vacatur of an arbitral award).  Lastly, there is nothing in the record to suggest that, in rendering the Award, the Arbitrator acted in "manifest disregard" of the law.  *Porzig*, 497 F.3d at 139.

Accordingly, judgment in the amount of $40,763.17 is appropriate, and both the record and the deferential standard of review due under the LMRA require the Court to confirm the Award.  Further, because the Award itself affords interest in the amount of 6.75% per annum from the date of the Award, the Court finds that prejudgment interest on the Award is appropriate.  *See, e.g.*, *N.Y.C. Dist. Council of Carpenters* v. *Dash Floor Covering, Inc.*, No. 17 Civ. 798 (ARR) (JO), 2018 WL 1370267, at *4 (E.D.N.Y. Mar. 1, 2018), *report and recommendation adopted*, No. 17 Civ. 798 (ARR) (JO), 2018 WL 1368026 (E.D.N.Y. Mar. 16, 2018) (collecting cases).

### B. The Court Grants in Part Petitioners' Application for Attorneys' Fees and Costs

In addition to the amounts specified in the Award, Petitioners now seek $2,769.50 in attorneys' fees for 12.1 hours of work performed by Virginia & Ambinder, LLP ("V&A"), and $164.14 in costs related to the filing of this matter, which excludes the $400 in court costs set forth in the Award. (Pet. 56.1 ¶¶ 34-35; Virginia Bill).

#### 1. Applicable Law

"Generally, 'in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award.'" *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Formula 1 Builders, LLC*, No. 17 Civ. 1234 (GHW), 2017 WL 1483369, at *4 (S.D.N.Y. Apr. 25, 2017) (quoting *Int'l Chem. Workers Union (AFL-CIO), Local No. 227* v. *BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)). But while Section 301 of the LRMA does not provide for the award of attorneys' fees, two independent bases support such an award here.

*First*, "a contractual provision for the payment of [attorneys'] fees provides a basis to award them." *N.Y.C. Dist. Council of Carpenters* v. *JFD Sales Consulting Servs. Corp.*, No. 17 Civ. 3733 (LGS), 2017 WL 4736742, at *2 (S.D.N.Y. Oct. 19, 2017). *Second*, a court may "exercise its inherent equitable powers to award attorney's fees when opposing counsel acts in bad faith." *N.Y.C. Dist. Council of Carpenters* v. *Gen-Cap Indus., Inc.*, No. 11 Civ. 8425 (JMF), 2012 WL 2958265, at *5 (S.D.N.Y. July 20, 2012). A finding of bad faith may be made "when a challenger refuses to abide by an arbitrator's

11

decision without justification[.]" *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman, Retraining, Educ. & Indus. Fund* v. *Mountaintop Cabinet Mfr. Corp.*, No. 11 Civ. 8075 (JMF), 2012 WL 3756279, at *4 (S.D.N.Y. Aug. 29, 2012) (internal quotation marks and citation omitted).

To determine an appropriate attorneys' fees award, the Court must assess the reasonableness of the attorney's hourly rate and the number of hours she billed at that rate. *See generally Lilly* v. *City of New York*, 934 F.3d 222, 227-33 (2d Cir. 2019). "A reasonable hourly rate is 'what a reasonable, paying client would be willing to pay.'" *N.Y.C. & Vicinity Dist. Council of Carpenters* v. *Plaza Constr. Grp., Inc.*, No. 16 Civ. 1115 (GHW), 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016) (quoting *Watkins* v. *Smith*, No. 12 Civ. 4635 (DLC), 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015)). "A reasonable hourly rate is a rate 'in line with ... prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *McDonald ex rel. Prendergast* v. *Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (quoting *Blum* v. *Stenson*, 465 U.S. 886, 895 n.11 (1984)). "It is within the Court's discretion to reduce the requested rate when the Court finds the rate unreasonable in the relevant market." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Mahi Painting, Inc.*, No. 22 Civ. 6496 (GHW), 2022 WL 7584364, at *5 (S.D.N.Y. Oct. 13, 2022) (internal quotation marks and citation omitted and

12

alteration adopted). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded from the calculation of a reasonable fee." *Id.* (internal quotation marks omitted).

In addition to attorneys' fees, the prevailing party may also recover reasonable costs incurred in seeking confirmation of an arbitral award. Generally, courts in this Circuit will "grant 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Metroplex Serv. Grp., Inc.*, No. 18 Civ. 5889 (PAE), 2018 WL 4141034, at *6 (S.D.N.Y. Aug. 30, 2018) (quoting *LeBlanc-Sternberg* v. *Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)).

### 2. An Award of Fees and Costs Is Warranted, Albeit at a Slightly Reduced Rate

Here, both bases for providing attorney's fees are separately met. Per the contractual terms of the CBA and the Collection Policy, Respondent must pay any attorneys' fees "incurred by the Union and/or fund trustees, plus costs of litigation, which have resulted from the bringing of such court action" (CBA Art. XVII § 19(c)), and such fees "shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services … for all time spent by Collection Counsel in collection efforts or in enforcing the Board of Trustees' rights to … audits" (Collection Policy § V(6); Pet. 56.1 ¶ 30). Further, Respondent has also failed to justify its refusal to abide by the Award. (Davidian Decl. ¶ 29; Grancio Decl. ¶ 4). The Court therefore deems it appropriate to award attorneys' fees.

Next, the Court assesses the reasonableness of the fees sought. V&A submitted hourly rates for the two associates and three legal assistants who worked on this case. Adrianna R. Grancio, a 2016 graduate of St. John's University School of Law and a then-associate at V&A, was billed out by the firm at a rate of $275 per hour for her work on this action. (Grancio Decl. ¶ 7; Virginia Bill). Ms. Grancio worked a total of 7.9 hours on this case resulting in a total cost of $2,172.50 for her services. (Virginia Bill). Maura Moosnick, a 2021 graduate of Fordham University School of Law and associate at V&A, was likewise billed out by the firm at a rate of $275 per hour for her work on this action. (Grancio Decl. ¶ 8; Virginia Bill). Ms. Moosnick worked a total of 0.6 hours on this case resulting in a total cost of $165 for her services. (Virginia Bill). Lastly, two legal assistants at V&A worked a total of 3.6 hours on this matter at a rate of $120 per hour, resulting in a total cost of $432 for their work. (*Id.*).

The Court has reviewed the time records and compared them against the prevailing rates in the community. It finds the rates requested for the work of the two legal assistants to be reasonable and slightly adjusts Ms. Grancio's rate to $250 per hour and Ms. Moosnick's rate to $225 per hour.

Beginning with the legal assistants, the Court observes that courts in this District have routinely held $120 to be reasonable for similar, if not identical, services by such individuals. *See, e.g., Mahi Painting, Inc.,* 2022 WL 7584364, at *5 (finding $120 per hour for V&A legal assistants to be reasonable); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare*

14

*Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Innovation Designs Inc.*, No. 21 Civ. 2801 (KPF), 2021 WL 4869951, at *7 (S.D.N.Y. Oct. 18, 2021) (same); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Skyeco Grp. LLC*, No. 19 Civ. 7608 (LGS), 2019 WL 6497533, at *3 (S.D.N.Y. Dec. 3, 2019) (same).

Turning to Ms. Grancio, the Court finds that her requested rate is above what courts in this District have consistently awarded her for similar services. Ms. Grancio has often sought fees of $275 per hour but has not been awarded them, and instead has regularly been awarded fees of $250 per hour. *See, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *CEI Contractors Inc.*, No. 21 Civ. 7870 (JPC), 2022 WL 3225680, at *5 (S.D.N.Y. Aug. 10, 2022) (reducing Ms. Grancio's fees from $275 to $250 per hour); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Land Cruising Properties Inc.*, No. 21 Civ. 7877 (KPF), 2022 WL 1125623, at *7 (S.D.N.Y. Apr. 15, 2022) (awarding Ms. Grancio fees of $250 per hour); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Three Guys Floor Covering Workroom Inc.*, No. 21 Civ. 910 (KPF), 2021 WL 4873152, at *7 (S.D.N.Y. Oct. 18, 2021) (same).

Further, on one recent occasion when Ms. Grancio requested $275 per hour, a sister court in this District reduced her rate even more substantially. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Northe Grp., Inc.*, No. 21 Civ. 719 (VSB) (GWG), 2022 WL 2125482, at *6 (S.D.N.Y. June 13, 2022) (denying Ms. Grancio's request for $275 per hour and instead awarding her $225 per hour), *report and recommendation adopted*, No. 21 Civ. 719 (VSB) (GWG), 2022 WL 3159303 (S.D.N.Y. Aug. 8, 2022).  After reviewing these cases, the Court finds, as it has previously, that Ms. Grancio's continued practice and additional experience in this field warrant a rate of $250 per hour, rather than $275 per hour, for a total amount of $1,975 in fees for 7.9 hours worked.

Regarding Ms. Moosnick, the Court finds, as it has previously, that an hourly rate of $225 represents the upper bound of the appropriate rate for an attorney with Ms. Moosnick's experience, and thus the Court adjusts her hourly rate from $275 to $225, amounting to a total of $135 in fees for 0.6 hours worked.  *See, e.g., Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Blue Moon Health Mgmt. LLC*, No. 22 Civ. 1807 (KPF), 2022 WL 16578119, at *7 (S.D.N.Y. Oct. 31, 2022) (adjusting Ms. Moosnick's award from $275 to $225)*; Mahi Painting, Inc.*, 2022 WL 7584364, at *6 (same); *see also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v.

*Triangle Enter. NYC, Inc.*, No. 20 Civ. 793 (RA), 2020 WL 2306484, at *6 (S.D.N.Y. May 8, 2020) (same); *Metroplex Serv. Grp., Inc.*, 2018 WL 4141034, at *5 (reducing hourly rate of V&A associate who graduated law school in 2016 from $275 to $225, which "represents the upper bound of prevailing rates in this District for junior associates").

In sum, Petitioners' request for attorneys' fees is granted at the reduced rate of $250 per hour for Ms. Grancio's work, the reduced rate of $225 per hour for Ms. Moosnick's work, and the requested rate of $120 per hour for the legal assistants' work. Based on the submitted time records, these rates yield a total award of $2,542 in additional attorneys' fees.

The Court also finds Petitioners' request for $164.14 in costs to be reasonable. This figure excludes the $400 in costs awarded by the Arbitrator and consists primarily of postage and service fees, which courts regularly permit. (Grancio Decl. ¶ 12; Pet. Br. 9). *See N.Y.C. & Vicinity Dist. Council of Carpenters* v. *Plaza Constr. Grp., Inc.*, No. 16 Civ.1115 (GHW), 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016) ("Recovery of such costs is routinely permitted"); *see also Innovation Designs Inc.*, 2021 WL 4869951, at *8 (finding $109.40 in costs to be reasonable when excluding the $400 in costs awarded by the arbitrator); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Onyx Glass & Metal Corp.*, No. 14 Civ. 7333 (PAE), 2015 WL 5144120, at *7 (S.D.N.Y. Sept. 1, 2015) (permitting recovery of $447.50 in costs that included postal charges and filing fees).

## C.     The Court Awards Post-Judgment Interest

Finally, Petitioners request an award of post-judgment interest.  Federal law "provides a uniform rate at which post-judgment interest is to accrue on civil money judgments recovered in federal district court."  *Westinghouse Credit Corp.* v. *D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004) (citing 28 U.S.C. § 1961). Specifically, post-judgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court … calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding … the date of the judgment." 28 U.S.C. § 1961(a).  Indeed, "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered," *Lewis* v. *Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)), and "[a]wards of post-judgment interest under § 1961 … apply to actions to confirm arbitration awards," *Trs. for the Mason Tenders Dist. Council Welfare Fund* v. *Euston St. Servs., Inc.*, No. 15 Civ. 6628 (GHW), 2016 WL 67730, at *2 (S.D.N.Y. Jan. 5, 2016) (citing *Westinghouse*, 371 F.3d at 100-01 (awarding post-judgment interest in action to confirm arbitration award)).  Accordingly, the Court grants Petitioners' request for post-judgment interest.

## CONCLUSION

For the foregoing reasons, Petitioners' motion for summary judgment is GRANTED as follows: The Clerk of Court is directed to enter judgment in favor of Petitioners in the amount of $43,469.31, consisting of: (i) the arbitration award of $40,763.17; (ii) $2,542 in attorneys' fees; and (iii) $164.14 in costs. Post-judgment interest will accrue at the statutory rate pursuant to 28 U.S.C. § 1961. In line with the Award, the Court also awards pre-judgment interest at the rate of 6.75 percent per annum from the date of the Award through entry of this judgment.

The Clerk of Court is further directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:   June 6, 2023
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge